Gregory B. Smith (USB #6657)

GREG SMITH & ASSOCIATES (ALAPC)

111 East 5600 South, Suite 105

Murray, Utah 84107

Telephone: (801) 651-1512

email: gs@justiceinutahnow.com

*Attorney for Plaintiff Clint Underwood*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CLINT UNDERWOOD,<br><br>Plaintiff,<br>vs.<br>RIO TINTO AMERICA, INC. a corporation registered and doing business in the State of Utah,<br><br>Defendant. | COMPLAINT<br><br>Civil No.<br><br>(JURY TRIAL DEMANDED) |

**COMPLAINT FOR AGE DISCRIMINATION AND RETALIATION IN EMPLOYMENT**

_____

Plaintiff, CLINT UNDERWOOD hereby complains against Defendant, demanding a trial by jury, and seeking relief as follows:

1

## PARTIES

1. Plaintiff, CLINT UNDERWOOD at all time mentioned herein was a resident of the State of Utah. All acts herein complained occurred in the State of Utah.

2. Defendant is a registered Utah business entity and is an "employer" under the Civil Rights Act of 1964. 29 USCA.

## JURISDICTION AND VENUE

3. This action is brought pursuant to the USC 29 § 621 *et seq* and the federal Age Discrimination in Employment Act, or ADEA (29 U.S.C. § § 621-634); the primary federal law that prohibits employers from discriminating against employees and applicants who are at least 40 years old based on age, and pursuant to the Utah Antidiscrimination Act that prohibits age discrimination in employment against any otherwise qualified individual who is 40 years of age or older (UT Code Sec. 34A-5-101 et seq.). The law applies to all public employers and private employers with 15 or more employees.

4. This Court has pendent jurisdiction of the related state law claims asserted under 28 U.S.C. § 1367 because they arise from a nucleus of operative facts common to the causes of action arising under this complaint,

and because exercising pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

5. Venue is proper in this Court pursuant to Utah Code § 78B-3-304(2) and 28 U.S. Code § 1391 because all actions alleged herein occurred within the State of Utah.

## PRELIMINARY STATEMENT

Plaintiff, Clint Underwood brings this action to remedy acts of age-related employment discrimination and retaliation perpetrated against him by defendant Rio Tinto America, Inc.

Plaintiff contends that Rio Tinto officials discriminated against him by treating him as though he had diminished capacity because of his age.

He was treated differently and less favorably because of his age.

Rio Tinto officials' actions, tone of voice, and daily discriminatory treatment of him had a disproportionate negative impact on his work performance and mental and physical health.

The implication and treatment were that Underwood was old and didn't fit the younger mold. All of Rio Tinto's discriminatory actions, verbal tone of voice, and isolated treatment, because of Underwood's age was mentally harassing.

3

Rio Tinto's preference in association for younger men to Underwood was obvious in the assigning of offices; the notices to attend meetings, with the overall bias for younger men to Underwood.

Underwood's female supervisor sexually discriminated against the older Underwood because of his age and her obvious predilection to younger men.

The age discrimination of Underwood created the assumption among other employees that Underwood was not as qualified as younger men and he was treated accordingly. This age-related discriminatory treatment created a subtle and pervasive hostile work environment.

This blatant discrimination and unfair treatment mentally and physically discriminated and harassed Underwood to the point it created a difficult and offensive work environment.

Upon Underwood seeking the advice of counsel who wrote Rio Tinto a letter advising it of its unlawful conduct, Underwood was promptly retaliated against and fired.

**STATEMENT OF FACTS**

At all times relevant, Rio Tinto has been and continues to be an "employer" engaged in interstate commerce within the meaning of the relevant statutes.

6. Defendant hired Mr. Underwood on or about December of 2016.

7. Mr. Underwood was willing to take upon himself the tasks given to him.

8. Around late summer or fall of 2017, Geraldine Lyons became Plaintiff's general manager.

9. She began invidiously targeting Underwood because of his age; he was over 60 at the time.

10. On or about November 16, 2017, Plaintiff discovered he had been left off a managers' group email distribution list.

11. Since Mr. Underwood was a manager, he was concerned that he was not on that email list, which was prepared by either Geraldine Lyons or her assistant.

12. This happened repeatedly because of Underwood's age. The younger managers were always included on the email list.

13. Once Mr. Underwood discovered he had been excluded from the list, he brought it to Ms. Lyon's attention.

14. By the time Mr. Underwood was fired, she had provided her younger managers physical space in her building, so that she could easily access, socialize, build and strengthen relationships with them.

15. Ms. Lyons did not afford that privilege to Mr. Underwood because of his age.

16. This disadvantaged Mr. Underwood because he was not able "to loop into the day-to-day communications" that would be necessary for the success of his career.

17. The younger managers were able to "loop into such day-to-day communications" because of their physical office proximity to Geraldine Lyons. As a result:

    a. Mr. Underwood was not privy to the latest training and thoughts that went around that office;

    b. He was outside the circle of managers;

    c. He was not privy to management changes;

    d. He was unable to provide his insights and get "bonus points" or "work credit" by offering his good ideas based on his experience;

    e. He lost out on the chit chat the other younger male employees had with Geraldine Lyons, which builds confidence and

relationships, and which often can lead to job stability and promotions.

18. There were meetings that took place that Mr. Underwood was unaware he had missed but that the younger managers were able to participate in, which worked against him, and caused him to feel excluded because of his age.

19. Ms. Lyons didn't advise him of the missed meetings, nor did she inquire as to why he wasn't there.

20. Mr. Underwood didn't know what he'd "missed out on," and feared that by missing the meetings, his role in the company could be diminished, and that he was becoming marginalized because of his age.

21. On or about Friday, March 2 there was a performance review scheduled that was rescheduled twice. It finally took place on March 9th.

22. During this review, Ms. Lyons started to pick on Mr. Underwood unfairly because of his age.

   a. She falsely accused Mr. Underwood of "setting people on edge."

   b. He asked for specific instances.

23. Instead of giving him any specifics, she indicated she could **not** give specific examples.

24. On or about Friday, April 13, Ms. Lyons said that a formal action plan would be put in place, and that an action plan needed to be created by Mr. Underwood. Mr. Underwood timely and efficiently complied with her request although the "action plan" was not reviewed until April 30.

25. Ms. Lyons read Underwood a letter per HR's instruction, and then she left without further discussion.

    a. This greatly confused Mr. Underwood, and he was not sure where things were going, and felt he was being targeted because of his age.

    b. He had complied with all of her requests.

26. Mr. Underwood was willing to make any adjustment or improvement necessary.

27. Mr. Underwood created a plan for improvement, and presented it to her.

28. He had done his best to honor and value his job.

29. He had never been written up, nor had he been tardy or negligent in his duties.

30. Before Geraldine Lyons showed became his supervisor, things had been smooth sailing for him.

31. He was perplexed as to why his Ms. Lyons told him that he was essentially falling short.

32. Feeling that he was being targeted for age discrimination, he formally asked that Rio Tinto do an internal investigation of the matter.

33. The request was made in writing (via a letter and email) on April 24, 2018 by his attorney. Exhibit A.

34. The request was received and reviewed by Rio Tinto.

35. Rio Tinto knew of the protected activity by Mr. Underwood.

36. Rio Tinto then retaliated against Mr. Underwood by firing him 20 days later.

37. His firing was a direct result of his good faith request for an investigation into his age related concerns.

38. Subsequently, on May 4, the plan prepared and presented by Underwood on April 30 was approved.

39. Despite the approval of his plan and all his efforts to be the best employee possible, on Monday, May 14, upon arriving at a meeting, he was presented with a termination notice.

40. He was fired one day before his 62nd birthday.

41. Prior to being fired, Underwood had not failed at any material task.

42. Rio Tinto fired Mr. Underwood by way of retaliation for exercising his legal right to question why he was he was being discriminated against because of his age.

43. Mf. Underwood contends that Rio Tinto officials discriminated against him by treating him as though he had diminished capacity because of his age.

44. He was treated differently and less favorably because of his age.

45. Rio Tinto officials' actions, tone of voice, and daily discriminatory treatment of him had a disproportionate negative impact on his work performance and mental and physical health.

46. The implication and treatment were that Underwood was old and did not fit its mold for younger employees.

47. All of Rio Tinto's discriminatory actions, verbal tone of voice, isolated treatment, because of Underwood's age were mentally harassing.

48. Rio Tinto's preference in association for younger men to Underwood was obvious in the assigning of offices; the notices to attend meetings, with the overall bias for younger men to Underwood.

49. Underwood's female supervisor, Geraldine Lyons, discriminated against Underwood because of his age and her obvious predilection to younger men.

50. The age discrimination of Underwood created the assumption among other employees that Underwood was not as qualified as younger men and he was treated accordingly.

51. This age-related discriminatory treatment created a subtle and pervasive hostile work environment.

52. This blatant discrimination and unfair treatment mentally and physically discriminated and harassed Underwood to the point it created a difficult and offensive work environment.

53. Upon Underwood seeking the advice of counsel who wrote Rio Tinto a letter advising it of its unlawful conduct, Underwood was promptly retaliated against and fired.

54. But for the concern Underwood raised about age discrimination, Rio Tinto never would have fired him.

55. Defendant took adverse action against Mr. Underwood because of his age.

56. This is not a case in which Mr. Underwood was fired because of poor business judgment.

57. Ms. Lyons, the supervisor performed acts motivated by animus that were intended to cause an adverse employment action,

58. Those acts were the direct and proximate causes of the ultimate employment action of firing Mr. Underwood.

59. Mr. Underwood filed with the UALD/EEOC, and he was granted a Right to Sue. Exhibit B.

60. Mr. Underwood has filed this complaint within 90 days of having received such.

## CAUSES OF ACTION

### Count One
### (Age Discrimination in Violation of ADEA 29 USC 621)

61. The foregoing paragraphs are realleged and incorporated by reference herein.

62. The Defendant's conduct as alleged above constitutes discrimination based on age discrimination in violation of the ADEA.

63. The stated reasons for the Defendant's conduct were not the true reasons, but instead were a pretext to hide the Defendant's discriminatory animus.

64. Plaintiff's age was the cause and motivating reason he was discriminated against.

## Count Two
### (Reprisal for Engaging in Protected Activities)

65. The foregoing paragraphs are realleged and incorporated by reference herein.

66. The Defendant's conduct as alleged above constitutes retaliation against Plaintiff because he engaged in an activity that is protected by the ADEA, to wit, rightfully requesting a review of his good faith belief he was being discriminated against because of his age.

67. Rio Tinto's explanations as to why Mr. Underwood was fired are so weak, implausible, inconsistent or incoherent that they amount to nothing more than a subterfuge for discrimination.

68. In having his attorney write a letter to Defendant on April 24, 2018, Plaintiff was engaged in the protected opposition to age discrimination.

69. Defendant knew Plaintiff's letter was a protected activity.

70. Plaintiff reasonably believed Defendant's adverse actions were related to age discrimination.

71. A causal connection exists between the protected activity and the materially adverse action taken by Defendant.

## Count Three
### (Hostile and Abusive Working Environment)

72. The foregoing paragraphs are realleged and incorporated by reference herein.

73. The Defendant's conduct as alleged above constitutes a hostile and abusive working environment in violation of Title VII and the ADEA.

74. A causal connection exists between defendant's acts of age discrimination and the hostile working environment.

**RELIEF REQUESTED/PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays judgment against Defendants for the following relief:

1. All statutory, general, compensatory damages that the law will allow, and for damages which can be established at trial.

2. An order awarding damages for wrongful, constructive termination through retaliation (lost income, liquidated damages);

3. An order requiring Defendants to pay all costs, legal fees, and expenses incurred in this action;

4. Any such further orders as the Court may deem just and proper under the circumstances, such as pre- and post-judgment interest.

DATED this 1st day of September 2019.

                                GREG SMITH AND ASSOCIATES PC

                                <u>/s/ Gregory B. Smith</u>
                                Gregory B. Smith